UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Kelly L. R., | Case No. 22-CV-2952 (JFD) |
| Plaintiff, | |
| v. | ORDER |
| Martin J. O'Malley, Commissioner of the Social Security Administration, | |
| Defendant. | |

Pursuant to 42 U.S.C. § 405(g), Plaintiff Kelly L. R. seeks judicial review of a final decision by the Commissioner of the Social Security Administration, which denied the Plaintiff's application for disability insurance benefits ("DIB"). The case is before the Court on the parties' cross-Motions for Summary Judgment (Dkt. Nos. 16 and 19). Plaintiff raises three issues for judicial review. First, whether the administrative law judge ("ALJ") properly considered the supportability and consistency of a medical opinion by Courtney Mike, MA/LADC, Plaintiff's psychotherapist. Second, whether the ALJ erred by not including an absenteeism limitation in determining Plaintiff's capacity for work. Third, whether the ALJ was constitutionally appointed, but Plaintiff acknowledges this issue is foreclosed by *Dahle v. Kijakazi*, 62 F.4th 424 (8th Cir. 2023), *cert. denied sub nom. Dahle v. O'Malley*, 144 S. Ct. 549 (2024). Defendant opposes Plaintiff's motion and asks the Court to affirm the final decision. As set forth below, the Court concludes that the ALJ erred in his consideration of Ms. Mike's opinion. The Court therefore grants Plaintiff's

motion, denies Defendant's motion, reverses the final decision of the Commissioner, and remands the matter to the Social Security Administration for further proceedings.

I.     Background

Plaintiff applied for DIB on January 30, 2020, alleging she has been disabled as of June 20, 2019, due to posttraumatic stress disorder, an intellectual disability, a learning disability, depression, anxiety, thyroid problems, arthritis, and diabetes. (*See* Soc. Sec. Admin. R. (hereinafter "R.") 18, 258.)[1] She has past relevant work experience primarily as a janitor and fast-food employee (R. 259, 277.)

   A.     Evidence from Therapist Courtney Mike

One of Plaintiff's medical providers is Courtney Mike, a therapist. Plaintiff's goals in treatment included increasing her adherence to prescribed medications for depression and anxiety; improving her sleep, appetite, energy, mood, anxiety, memory, work attendance, work functioning, concentration, and activities of daily living; developing coping skills, problem-solving skills, emotional regulation, and self-control; identifying and replacing maladaptive or negative thoughts; and learning how to interact with people effectively. (R. 456–57.) Plaintiff's documented mental impairments were generalized anxiety disorder, mild depression, and cognitive impairment. (R. 468.)

Ms. Mike's mental status examinations of Plaintiff often documented that Plaintiff was cooperative, oriented, and with normal mood and affect. (R. 468, 472, 579, 591, 1107, 1111, 1120, 1136, 1139, 1141.) Other times, Plaintiff struggled with managing her anger

---

[1] The administrative record is filed at Dkt. No. 11. The record is consecutively paginated, and the Court cites to that pagination rather than ECF number and page.

and irritability, showed a depressed mood, or had limited concentration in sessions. (R. 472, 488, 575, 591–92.) Ms. Mike wrote in one progress note that Plaintiff experienced high irritability and anger outbursts and lashed out verbally. (R. 489.) In December 2020, Plaintiff reported symptoms of fatigue, poor concentration, crying spells, depressed mood, irritability, and memory problems. (R. 1135.) Plaintiff described her symptoms to Ms. Mike as intermittent in frequency, and mild to moderate in severity. (R. 1135.)

Ms. Mike completed a Mental Functioning Questionnaire on March 17, 2021. (R. 599–601, 1110.) Ms. Mike indicated on the questionnaire that Plaintiff was mildly limited in her ability to remember locations and work-like procedures, but moderately-to-markedly limited in her ability to understand and remember very short and simple instructions. (R. 599.) For the moderate-to-marked limitation, Ms. Mike explained that Plaintiff "struggles to comprehend instructions at times and gets frustrated." (R. 599.) Ms. Mike next indicated that Plaintiff was mildly limited in her ability to be aware of normal hazards and take appropriate precautions, moderately limited in responding appropriately to changes in a routine work setting, moderately limited in dealing with normal work stress, and moderately-to-markedly limited in her ability to travel in unfamiliar places. (R. 599.) For the moderate-to-marked limitation, Ms. Mike explained that Plaintiff "exhibits panic symptoms and feels overwhelmed in unfamiliar places." (R. 599.) With respect to social-interaction limitations, Ms. Mike found Plaintiff mildly limited in interacting appropriately with the public, maintaining socially appropriate behavior, and adhering to basic standards of neatness and cleanliness; mildly-to-moderately limited in getting along with coworkers without distracting them or exhibiting behavioral extremes; and markedly limited in

accepting instructions and responding appropriately to criticism from supervisors. (R. 600.) For the marked limitation, Ms. Mike explained that Plaintiff had difficulty accepting criticism, felt angry, and would walk away or argue. (R. 600.) Concerning concentration, persistence, and pace limitations, Ms. Mike found Plaintiff would be mildly limited in carrying out very short and simple instructions, sustaining an ordinary routine without special supervision, and performing at a consistent pace without an unreasonable number and length of rest periods; moderately limited in performing activities within a schedule, maintaining regular attendance, being punctual, working in proximity to others without distraction, working in coordination with others, making simple work-related decisions; and moderately-to-markedly limited in maintaining attention and concentration for extended periods and completing a normal workday/workweek without interruptions from psychological symptoms. (R. 600.) For the moderate-to-marked limitations Ms. Mike explained that Plaintiff has difficulty maintaining focus for extended periods of time without breaks and "often needs to take mental health days depending on the week," up to two times a week. (R. 600.)

      Ms. Mike estimated on the questionnaire that Plaintiff would be "off task," meaning her symptoms would be severe enough to interfere with the attention and concentration needed to perform simple work tasks, 20% of the workday. (R. 601.) Plaintiff would also need to take 20-minute breaks every few hours for arthritis pain and mental functioning. (R. 601.) Ms. Mike thought Plaintiff's impairments and treatments would cause her to be absent or tardy more than four times a month, because Plaintiff needed "mental health days" up to twice a week. (R. 601.)

Plaintiff discontinued therapy with Ms. Mike the following month, in April 2021, because Ms. Mike was leaving the practice. Plaintiff indicated that her depression and anxiety were manageable, but that her irritability and angry outbursts could affect her relationships. (R. 1104.) Ms. Mike indicated that Plaintiff had made slight progress in all of her goals. (R. 1104–05.) Plaintiff said she had started a new job, which she loved. (R. 1108.)

B.    **Procedural History**

Plaintiff's DIB application was denied at both the initial review and reconsideration stages. She requested an administrative hearing before an ALJ, and that hearing was held on June 17, 2021. (R. 43.) Plaintiff testified in relevant part that she called in sick to work when she felt very overwhelmed or stressed by work or family relationships. (R. 74.) She took these "mental health days" about two or three times per month. (R. 74–75.)

On October 13, 2021, the ALJ issued a written decision finding Plaintiff not disabled. (R. 18–32.) The ALJ followed the familiar five-step sequential analysis outlined in 20 C.F.R. § 404.1520. At each step, the ALJ considered whether Plaintiff was disabled based on the criteria of that step. If she was not, the ALJ proceeded to the next step. *See* 20 C.F.R. § 404.1520(a)(4).

The ALJ first determined that Plaintiff had engaged in substantial gainful activity between April 16 and June 30, 2021, and thus was not disabled during that period of time. (R. 20–21.) The ALJ then continued with the analysis for the remainder of the period at issue. At the second step of the sequential analysis, the ALJ found that Plaintiff had the following severe impairments: obesity, posttraumatic stress disorder, hearing loss with a

history of tympanomastoidectomy, attention-deficit hyperactivity disorder, depressive disorder, anxiety disorder, and an unspecified intellectual disorder. (R. 21.) At step three, the ALJ concluded that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I. (R. 22.)

Before proceeding to step four, the ALJ assessed Plaintiff's RFC, which is a measure of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). As part of the RFC assessment, the ALJ considered Ms. Mike's opinion rendered in the Mental Functioning Questionnaire on March 17, 2021. The ALJ's discussion of Ms. Mike's opinion is set forth in full below.

> Courtney Mike, MA LADC opined the claimant had moderate to marked mental limitations. She will be off task 20% of the time and will be absent 4 or more days per month. (Ex. C7F). This is not persuasive. The opinion is not consistent with the normal mental status examinations in the record. The claimant's attitude was cooperative. Mood was normal. Affect was appropriate. Thought content was logical and goal directed. Remote memory was intact. Attention span and concentration were focused. (Ex. C2F/3, 8, 51). The claimant reported having a little bit of irritability with her family, but overall is doing well. (Ex. C6F/4, 8).

(R. 28.) Based on the ALJ's consideration of this opinion and other relevant evidence of record, the ALJ assessed Plaintiff's RFC as follows:

> [Plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except she can work in environments that are of moderate noise or quieter as defined in the SCO, and can occasionally perform tasks that require talking and hearing. She can perform simple, routine tasks. She may work in an environment with routine, predictable changes. She can have superficial interactions with others, such as taking instructions, relaying information, and transferring materials.

(R. 24.) With this RFC, the ALJ concluded, Plaintiff could not perform her past work, but could work as a sorter, merchandise marker, or office helper. (R. 29–30.) Consequently, Plaintiff was not disabled. (R. 32.)

The Appeals Council denied Plaintiff's request for review of the ALJ's written decision. (R. 1.) This made the ALJ's decision the final decision of the Commissioner for the purpose of judicial review.

## II. Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence in the record as a whole supports the decision, 42 U.S.C. § 405(g), or whether the ALJ committed an error of law, *Nash v. Commissioner, Social Security Administration*, 907 F.3d 1086, 1089 (8th Cir. 2018). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). The Court must examine "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id.* (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). The Court may not reverse the ALJ's decision simply because substantial evidence would support a different outcome or because the Court would have decided the case differently. *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). In other words, if it is possible to reach two inconsistent positions from the evidence and one of those positions is that of the Commissioner, the Court must affirm the decision. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

A claimant has the burden to prove disability. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). To meet the definition of disability for DIB, the claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The disability, not just the impairment, must have lasted or be expected to last for at least twelve months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

### III. Discussion

#### A. The ALJ Did Not Properly Consider Ms. Mike's Opinion.

Title 20 C.F.R. § 404.1520c sets forth the standards under which an ALJ considers medical opinion evidence. An ALJ considers how "persuasive" an opinion is according to five factors: supportability, consistency, relationship with the claimant, specialization, and any other relevant factors. 20 C.F.R. § 404.1520c(c)(1)–(5). The "most important factors" are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). The regulatory language pertaining to supportability provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). In evaluating consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinions or prior

administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). In other words, supportability looks to how well the medical source justifies their own opinion, and consistency looks to how well the medical source's opinion fits with evidence from other sources.

Given that the supportability and consistency factors are the most important factors to the persuasiveness determination, an ALJ "*will explain how* [the ALJ] considered the supportability and consistency factors for a medical source's medical opinions . . . ." 20 C.F.R. § 404.1520c(b)(2) (emphasis added). "The ALJ need not use the magic words of 'supportability' and 'consistency,' but it must be clear they were addressed." *Svendsen v. Kijakazi*, No. 1:21-CV-1029-CBK, 2022 WL 2753163, at *8 (D.S.D. July 14, 2022). The ALJ's failure to articulate how he or she considered these factors is a legal error that warrants remand. *Susan H. v. Kijakazi*, No. 21-CV-2688 (ECT/ECW), 2023 WL 2142786, at *3 (D. Minn. Feb. 21, 2023); *Michael B. v. Kijakazi*, No. 21-CV-1043 (NEB/LIB), 2022 WL 4463901, at *2 (D. Minn. Sept. 26, 2022); *Joel M. B. v. Kijakazi*, No. 21-CV-1660 (PAM/ECW), 2022 WL 1785224, at *3 (D. Minn. June 1, 2022) (citing *Lucus v. Saul*, 960 F.3d 1066, 1070 (8th Cir. 2020)).

### 1.     **Supportability**

In this case, the ALJ did not explain how he considered the supportability of Ms. Mike's opinion. The ALJ did not mention the word "supportability" (or any variant of that word), nor did the ALJ otherwise articulate how he considered the supportability factor. Not only did the ALJ fail to explain how he considered the supportability factor, but it is not apparent from the ALJ's discussion of Ms. Mike's opinion that he considered it at all.

The Commissioner suggests that the ALJ's reference to certain exhibits—"Ex. C2F/3, 8, 51" and "Ex. C6F/4, 8" should suffice for the supportability discussion. The Court disagrees. Pages 3 and 8 of Exhibit C2F are references to a progress note by Shannon Meyers, DNP, APRN/CNP (R. 435, 440), not to any evidence from Ms. Mike, and thus do not relate to supportability. *See* 20 C.F.R. § 404.1520c(c)(1) (explaining that supportability relates to "the objective medical evidence and supporting explanations presented by a medical source" to support her medical opinion). The same is true for page 51 of Exhibit C2F, which is a reference to a progress note by Hilary Winkelmann, APRN/CNP. (R. 483.)

That leaves only pages 4 and 8 of Exhibit C6F, which are references to progress notes by Ms. Mike. (R. 575, 579.). The ALJ cited to these pages to support the statement, "The claimant reported having a little bit of irritability with her family, but overall is doing well." (R. 28.) Page 8, however, does not contain a finding from Ms. Mike that Plaintiff was doing well; rather, Ms. Mike noted that Plaintiff reported "having some trouble" with her spouse and "feeling frustrated." (R. 589.) On page 4 of the exhibit, the relevant notations are a "slight improvement," an irritable mood, Plaintiff's reported improvement of her relationship with her spouse, and Plaintiff's reported irritability with other family members. The latter two notations on the progress note are Plaintiff's subjective reports, not "objective medical evidence" or "supporting explanations" by Ms. Mike. Thus, they do not relate to the supportability analysis. *See* 20 C.F.R. § 404.1520c(c)(1). The second notation evidences an irritable mood, which would actually support the persuasiveness of Ms. Mike's opinion. And the first notation speaks only in vague language of a "slight improvement," not even that Plaintiff was "doing well."

The ALJ's citation to the two pages of Ms. Mike's progress notes cannot be construed as a discussion of how irritability and a "slight improvement" would relate to the vast majority of limitations opined by Ms. Mike, such as that Plaintiff would be moderately-to-markedly limited in her ability to understand and remember very short and simple instructions, moderately limited in responding appropriately to changes in a routine work setting, moderately limited in performing activities within a schedule, moderately limited in maintaining regular attendance, moderately limited in being punctual, moderately limited in making simple work-related decisions, and moderately-to-markedly limited in maintaining attention and concentration for extended periods. Ms. Mike provided supporting explanations for these limitations on the Mental Functioning Questionnaire itself, such as Plaintiff "struggles to comprehend instructions at times," "exhibits panic symptoms and feels overwhelmed in unfamiliar places," and "has difficultly keeping focus for extended periods of time without breaks." (R. 599–600.)

The Commissioner offers several post-hoc rationalizations for the ALJ's consideration of the supportability factor and cites to other evidence from Ms. Mike that the ALJ did not cite in his consideration of the supportability factor. The Court cannot accept these post-hoc rationalizations and identifications of supporting evidence. *See Stafford v. Kijakazi*, No. 4:20-CV-1011-NKL, 2022 WL 358061, at *4 (W.D. Mo. Feb. 7, 2022); *Shanda v. Colvin*, No. 14-CV-1838 (MJD/JSM), 2015 WL 4077511, at *30 (D. Minn. July 6, 2015) (citing *S.E.C. v. Chenery Corp.*, 318 U.S. 80, 87 (1943)) (limiting judicial review of an agency's final decision to the bases given in the decision)). "It is not the role of this Court to speculate on the reasons that might have supported the ALJ's

11

decision or supply a reasoned basis for that decision that the ALJ never gave." *Stacey S. v. Saul*, No. 18-cv-3358 (ADM/TNL), 2020 WL 2441430, at *15 (D. Minn. Jan. 30, 2020), *R. & R. adopted*, 2020 WL 1271163 (D. Minn. Mar. 17, 2020).

The ALJ's failure to articulate how he considered the supportability factor is a legal error that warrants remand. Accordingly, the Court will reverse the Commissioner's decision and remand the matter to the Social Security Administration. On remand, the ALJ must reconsider Ms. Mike's opinion and explain how the ALJ considers the supportability factor, in accordance with 20 C.F.R. § 404.1520c.

2.    **Consistency**

Plaintiff argues the ALJ erred in his consideration of the consistency factor because there is ample evidence in the record that is consistent with Ms. Mike's opinion. Plaintiff does not argue that the ALJ committed a legal error, but that substantial evidence does not support the ALJ's consideration of the consistency factor. Plaintiff focuses on three areas of functioning: accepting supervisory criticism, time off task during the workday, and absenteeism.

The ALJ specifically acknowledged Ms. Mike's opinion that Plaintiff would be off-task 20% of the time and absent four or more days per month, just before finding Ms. Mike's opinion "not persuasive." (R. 28.) The ALJ remarked that the opinion was not consistent with normal mental status examinations and cited two progress reports. The relevant findings in the progress reports, as recounted by the ALJ, were that Plaintiff was cooperative, had a normal mood, had an appropriate affect, had logical and goal-directed thought content, had intact remote memory, and had focused concentration and attention.

This is a sufficient articulation of the ALJ's consideration of the consistency factor. The ALJ explained how he considered the consistency factor and cited evidence from other sources that was not consistent with Ms. Mike's off-task, absenteeism, and acceptance-of-supervisory-criticism limitations. *See* 20 C.F.R. § 404.1520c(c)(2). The Court declines to reweigh the evidence, as Plaintiff requests. The Court's duty is to consider evidence that supports and detracts from the ALJ's decision and where it is possible to reach two inconsistent positions from the evidence, one of which is the position of the Commissioner, to affirm the decision. *Robinson*, 956 F.2d at 838. Substantial evidence supports the ALJ's consideration of the consistency factor.

      **B.**     **The Absenteeism Limitation**

Plaintiff argues that the ALJ failed to include an absenteeism limitation in Plaintiff's RFC. As support for this argument, Plaintiff relies on the opinion of Ms. Mike, Plaintiff's own hearing testimony, evidence from the State Medical Review Team ("SMRT"), and paystubs from Smart Data documenting absences.

A claimant's RFC is the measure of the most a claimant can do despite her limitations. 20 C.F.R. § 404.1545(a)(1); *see Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022) ("A claimant's residual functional capacity is a measurement of their ability to do sustained physical or mental work, despite their health limitations."). The ALJ "must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of h[er] limitations." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). Here, the ALJ determined, relevant to work attendance, that Plaintiff could do simple and routine tasks,

13

could work in an environment with routine and predictable changes, and could have superficial interactions with others, including taking instructions, relaying information, and transferring materials. The ALJ did not include any absenteeism limitations.

The only time the ALJ expressly addressed absenteeism in the written decision was in his consideration of Ms. Mike's opinion. The Court has already determined that the ALJ erred in that consideration. On remand, the ALJ must necessarily reconsider the absenteeism limitation opined by Ms. Mike as part of the reconsideration of her opinion. The Court need not address that evidence further at this time.

With respect to Plaintiff's hearing testimony, the ALJ specifically mentioned Plaintiff's testimony about taking time off for mental health days in his assessment of whether Plaintiff's symptoms limited her ability to do work-related activities. (R. 25.) The ALJ did not fully accept, however, the degree of intensity, persistence, and limiting effects of the symptoms that Plaintiff claimed would contribute to absenteeism. (R. 25.) Plaintiff's reliance on her hearing testimony fails for two reasons. First, Plaintiff has not challenged the ALJ's evaluation of the intensity, persistence, or limiting effects of her symptoms. Second, even if she had, the ALJ's evaluation of her symptoms is supported by substantial evidence. Namely, the ALJ identified discrepancies between Plaintiff's claimed symptoms on the one hand, and on the other, objective medical evidence from mental status examinations, Plaintiff's ability to engage in substantial gainful activity from April to June 2021, her ability to do other work in 2020 and 2021, and her assertion (made in connection with receipt of unemployment benefits) that she was ready, willing, and able to work. (R.

26–27.) Consequently, the ALJ did not err in considering Plaintiff's symptoms as they related to potential absenteeism from work.

Turning to evidence from the SMRT, that team was tasked with determining whether Plaintiff was eligible for state disability benefits. (R. 860.) In relevant part, the SMRT determined that Plaintiff was not able to maintain pace and persistence for a 40-hour work week. (R. 864.) The ALJ specifically mentioned this finding in the written decision but found it not persuasive because it was not consistent with normal mental status examinations that showed a cooperative attitude, normal mood, appropriate affect, logical and goal-directed thought content, intact remote memory, and focused concentration and attention. (R. 28.) Substantial evidence supports the ALJ's finding. (*E.g.*, R. 440, 443, 446, 450, 454, 459, 476 (mental status examinations documenting these findings).)

Finally, regarding paystubs that documented Plaintiff's absences from work, Plaintiff has not shown that these documented absences were due to her medical impairments. The earnings statements simply state "unpaid time off." (R. 240–44.) They say nothing about *why* Plaintiff took time off. Plaintiff also has not shown that her impairments would cause her to be absent from work in the future or on a continuing basis. In addition, it is not surprising that Plaintiff can point to some evidence in a 1,900-page record that detracts from the ALJ's decision, but the Court may not reverse the decision simply because other evidence would support a different conclusion. *See Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017). Lastly, the ALJ's failure to cite to the paystubs "does not indicate that such evidence was not considered." *Black v. Apfel*, 143

F.3d 383, 386 (8th Cir. 1998). Therefore, the ALJ did not err by failing to include an absenteeism limitation based on Plaintiff's paystubs.

### C. The ALJ and Appeals Council Members Were Properly Appointed

Plaintiff argues that the ALJ and members of the Appeals Council were not properly appointed because a previous Acting Commissioner of Social Security was not properly serving when the appointments of the ALJ and Appeals Council members were ratified. As Plaintiff acknowledges, this argument is foreclosed by *Dahle v. Kijakazi*, 62 F.4th 424 (8th Cir. 2023), *cert. denied sub nom. Dahle v. O'Malley*, 144 S. Ct. 549 (2024). Accordingly, the Court does not grant remand on this basis.

### IV. Conclusion

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1. Plaintiff's Motion for Summary Judgment (Dkt. No. 16) is **GRANTED**;
2. The Commissioner's decision is reversed and the matter is remanded for further consideration of Ms. Mike's opinion and explanation of how the ALJ considers the supportability factor, in accordance with 20 C.F.R. § 404.1520c; and
3. Defendant's Motion for Summary Judgment (Dkt No. 19) is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Date: March 13, 2024

*s/ John F. Docherty*
JOHN F. DOCHERTY
United States Magistrate Judge